Our next and last case for this morning is Barry v. Anderson, No. 22-3098. Counsel, we're glad to see you. Good afternoon. May it please the Court. My name is Rashida Cherry, and I represent the plaintiff's appellant, Muhammad Barry. I'm respectfully requesting five minutes for my rebuttal argument. That's granted. Okay. Plaintiff Muhammad Barry is requesting that this Court reverse the October 3, 2022, order from the District Court that granted summary judgment to the defendant. He's also requesting that the Court reverse the order that denied his motion to amend the complaint. Finally, he's requesting a reversal of the order that denied his motion for reconsideration. Your Honor, this is a Gartner v. Bivens action, and therefore, summary judgment is not appropriate. The events giving rise to my client Bivens' action occurred on June 29, 2017, when federal officers appeared at his home and arrested him and detained him and used excessive force against him. My client would like the Court to note the fact that there was no warrant against him. The warrant was issued for the arrest of his brother. My client is his own person. He should not be locked in together with his brother. He has his own constitutional rights that should have been adhered to. However, these officers disregarded completely his rights by detaining him, although he did not do anything wrong, arresting him, and subjecting him to excessive punishment. My client sustained broken ribs and a number of other physical injuries. I submitted a 200-page medical report to the District Court outlining and detailing each and every injury that my client suffered as a result of the defendant's hands. Now, we're aware of the facts, but, you know, you say this is – I think you say in your briefs, anyway, if you didn't say it here, that this case is indistinguishable from Bivens'. And I know you know that, but your adversary in the District Court feels that this is a new Bivens' context. And it seems that the meaningful differences, and maybe you can address them, are that Zamar, the defendant here, was a federal immigration officer, which is different than Bivens'. And Zamar was enforcing federal immigration law, which is different than Bivens'. So, tell us about why this is so close to Bivens'. Okay. I believe I kind of addressed the second part, which is the claim that the officers were executing a warrant, or an administrative warrant, as opposed to a criminal warrant. I note that there was no warrant against my client. He was arrested without a warrant. His condition is that he was arrested without probable cause, which is exactly what took place in Bivens'. My client's constitutional rights under the Fourth Amendment, just as in Bivens', were violated by these officers who arrested him in the absence of probable cause and tried and found him. He was handcuffed, as in Bivens', so therefore the mechanism is the same. Well, now, how about the Fourth Circuit decision, the Toon Coast, if I'm pronouncing that right, case? That seems to go against you. What's your position on that? Okay. I believe that case, there was a warrant in that case for the arrest of the defendant. Again, this warrant did not pertain to my client. My client was an innocent person. He's a U.S. citizen. He has no criminal record. Yet these officers went in the house. He told these officers that his name was Muhammad. He provided them with his driver's license and his taxi identification. These officers were aware that he was not the person subject to the warrant. Yet they detained him, they hit him, they abused him, they attacked him, and they caused him to suffer broken ribs and other physical injuries. There is some indication in the record that your client was somewhat aggressive with respect to the officers that were entering the apartment. Do you want to respond to that? Yes. My client denies that he was aggressive at all. He indicates that he did not resist one bit. And in fact, the district court found that my client raised a material issue regarding whether or not he was resisting or was religious or whether the officers had cause or just cause to engage in an act that the officers committed against him. Did the district court make a finding that your client was not aggressive in confronting the law enforcement officers? The district court found that that was a material issue. Yes. The district court also found that my client also raised a material issue regarding Officer Zamar's involvement. Officer Zamar was indicating that he was not that involved. However, my client presented information showing that this officer came into contact with the same body parts or the same area of his body where he sustained these injuries. My client indicates that an officer put his knee on my client's neck, his back, and he sustained broken ribs and other injuries that he should be compensated for. As far as the district court's claim or position that this case raises a new category of defendant, my client also disagrees with that position. Is your client's case against a group of officers or just Zamar? Originally, it was filed or intended to be filed against a group of officers. However, my client attempted to amend the complaint at one point, but that was denied. At some point, during discovery or during litigation, information regarding the names of the other officers were disclosed to the plaintiff. However, the court denied my client's application to amend the complaint. At that time, my client was represented by a prior counselor. So exactly what is your claim currently and against whom? Okay, my claim is against ICE Officer Zamar. He's the sole defendant that remains in the case after the court did not allow the amendment. He is the one that you claim struck your client? Yes, and the court found the material issue in terms of his involvement, in terms of the extent of his involvement. You know, we have to also look at special factors under Bivens. Is it your position there was no national security interest here? Okay, yes, this occurred in a home. It did not occur on the border, as was the case in Hernandez and Egbert. There were also no issues involving military personnel. But what about immigration enforcement? Does that implicate national security? Well, immigration enforcement would implicate national security, but the immigration law was not being enforced with regards to my client. My client was arrested for a criminal charge. The officer said that he struck him, that he was belligerent, and he was arrested for an assault, a criminal assault, not for an immigration warrant to enforce any immigration law. That's interesting because the person that they were looking for, and there were quite a few officers, I think about eight or ten or so, the person they were looking for was not there. It seemed like they could just turn around and go back, but instead you say that they struck your client. Yes, I believe the person was there. He was upstairs. I don't think the record is clear about that. That's my client's brother. He was ultimately arrested, so that's another thing. If he was arrested and the officers continued their interactions with my client, then clearly that would be an immigration issue, or they wouldn't be enforcing an immigration warrant or trying to execute an immigration warrant at that point if the brother had already been arrested. But, again, the record is not clear. My client is requesting a remand so that those issues can be set out in the record. But your client suffered injuries at the hands of the police officers. That's right. Now, how many police officers were there? Ten. Ten? Yes. And you claim that one of them, Jamar, struck your client. Yes. At the beginning of the case, my client was not able to identify all of the officers. Jamar, I believe, had some type of criminal complaint against my client. But Jamar, in a report, had mentioned or admitted that he was a part of the group of officers who took down my client, who actually handcuffed my client. And my client specifically stated in his deposition that his injuries occurred at the time he was handcuffed. So, therefore, Jamar was part of the group that assaulted my client. And my client believes that he's entitled to damages against Jamar for the injuries that he caused. We have a couple of seconds left here. Do you want to deal with your motion to amend? I mean, your motion to amend was filed ten months after the amendment deadline, except by the district court. That seemed to – how is that – how did they lose their discretion here? Oh, yes. I account to, as far as background, my client had two attorneys. Right. During all this time. Apparently, these attorneys didn't file the motion. My client's position is that the information was provided after the February 1 deadline. So he's asking the court to consider that fact in terms of his case. Thank you so much. Thank you, counsel. And we'll hear from the appellate. Thank you, Your Honor. May it please the court. I'm Assistant United States Attorney Matthew Mayhew, and I represent United States Immigration and Customs Enforcement Deportation Officer Brody Jamar, who is being sued here in his individual capacity. Before I reach my introduction, I would like, with Your Honor's permission, to just correct a few things that were said previously that are inconsistent with the record in the law. Okay. First, I think it's important to note in the Tungco's decision out of the Fourth Circuit, there was no warrant present when those arrests were undertaken. Two, the record is clear and undisputed that Officer Jamar did not contact the appellant above his fee for his life. When arguing before this court, counsel referred to the injury. Does it matter at this point? I mean, does it matter that the factual background, that type of detail anyway, at this juncture? Your Honor, it does not. Okay. I just wanted to correct the record. Okay. There were suppositions that some sort of contact was made in the area where appellant's counsel referred to the injuries being in the room area, and the record is clear that Officer Jamar did not come into contact in that area. So there was no injury? I'm sorry? So there was no injury to the person that was in the room? It's not our position, Your Honor, that there was no injury. But with respect to the record being clear, the injuries to the appellant's ribs and midsection could not have been caused by Officer Jamar when the record is clear that he only came into contact with the appellant's legs and lower body. So your office already argues that this is just a garden variety bivens claim, that it is not meaningfully distinct from the well-known facts of bivens, and therefore there's no problem applying that case versus other cases that have come after it. What's your best argument in response? The district court got it right, Your Honor. With respect to doing a bivens analysis, the appellant cannot establish a bivens remedy because this lawsuit does represent a new context for bivens and special factors counsel against expanding bivens in this context where a United States Marshals Task Force is at the appellant's department to effectuate an immigration warrant. They're carrying out this administrative warrant on an appellant's brother, and the Third Circuit has noted in G, not all rights are remedies, even when they're enshrined in the United States Constitution. And just like G, where there's a context of national security and cyber security, and the court held that that's outside the realm of a warrantless search that's being done at a person's home as in bivens. Well, as a follow-up to Judge Mead's question, maybe you could respond to your adversary's argument that, hey, this was not a seizure under immigration law because this person's a citizen. This is actually criminal like in bivens. And it's important, Your Honor, to note, as the Giacchi case notes, that even before Egbert, the Supreme Court made it clear that the category of new context is broad and the threshold test is easily satisfied, counting the Supreme Court's previous decisions in Hernandez and Abbasi. And as the Egbert decision notes, we don't look at the granular analysis with respect to one particular officer who's at the scene. You look at the group of defendants and you look at the core function that got these officers to appellants' apartments. And that core function is an immigration warrant that is in the immigration context with national security implications. And as the court in G notes, quoting Egbert, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts. Accordingly, the district court properly found the appellant could not establish he was entitled to a bivens remedy. You think there's an argument, Your Honor, to make a point that border enforcement action is a more potentially clear application of national security interests, whereas this is interference at home. Does it stretch the national security distinction from bivens too far to say that it should apply to the execution of an immigration warrant? Respectfully, no, Your Honor. And two examples are this court's previous decision in Vanderclaes, where you have a TSA agent who's at an airport who is found to be in the national security context. And two, if you look at the Egbert decision, I think it's important to note that while that occurred on the border, it occurred at the home and the property of the person. And the Supreme Court found that there's no bivens remedy and that it's a new context where it occurred at the home. And here, appellant's own brother is the one who has an outstanding ICE detainer and a warrant for his arrest. And the national security interests in some ways are arguably greater, where you have someone who's made it past the border and is now in an apartment complex near others' homes. You say that Barry would not be able to bring the bivens actions against the U.S. Marshals who were part of the task force executing the warrant? That's correct, Your Honor. There was no physical contact at all? I'm sorry, Your Honor. There was no physical contact between the officers enforcing the warrant and the person who was inside the room? I think there's an argument, picking up on Judge Wetzler's point, that this particular officer didn't make the contact that's alleged in the complaint. But I understand your adversary to argue, well, that's not really relevant to the bivens determination here. And respectfully, you have to look at the core function of the Marshals. And the core function of the Marshals' task force here is effectuating an immigration warrant for a person's arrest. And as the Supreme Court in Eckert notes, and as this Court in Gee notes, you have to look at the function of the officers more largely than the particular officers in a given set of circumstances. There were quite a few officers in that warrant. I understand there was about ten officers? The record reflects that there were approximately ten. There was only one person in the room? Respectfully, Your Honor, there were three. There was the attendant who answered the door. There was the roommate who gave testimony in the record reflecting that the appellant was combative. And there was the appellant's brother who was hiding in the ceiling. Okay. And per the note, the memorandum that officers tomorrow prepared, on the day of the incident, before any of the challenges were known, establishing that the Marshals' task force knew that the appellant's brother had a history of weapons offenses, they knew that he had a history of resisting arrest, and they also knew that he had prior charges with respect to fraud. There is testimony in the record that someone was looking out from the property prior to the Marshals' entering the property, and the record is undisputed that the door was not immediately opened, that it had to have been knocked on a number of times before the task force was let in. Is there anything more, counsel? Respectfully, with respect to the amendment issue, the district court did not abuse its discretion when it ruled the appellant could not amend his complaint for a third time ten months after the deadline to do so passed. Well, you heard how your adversary responded to that. It was prior counsel, and there's an intervening fact. And respectfully, with regard to the intervening fact, Your Honor, the appellant sought to amend the complaint for a third time to add approximately five new defendants. The allegations are that they waited for this point in time because they wanted to conduct a deposition first. However, the undisputed record reflects that this is not actually true. The defendants who appellants sought to add were disclosed months prior, including in the March 2020 initial disclosures that Officers Lamar provided. That's specifically with respect to potential defendants Euler and Barone. And with respect to Officer Rossi, who appellant also sought to add, that individual is disclosed in February 2021. There's no mention of Officer Rossi in the deposition that occurred approximately, you know, one week before the late motion to seek amendment was granted. So there's no indication that counsel actually relied upon the testimony that came out during the deposition in order to amend the complaint. I'm trying to get a better picture of what exactly occurred there. There was one person, they knocked on the door, and I understand there were 10 or so officers. Is that accurate? The record reflects that there were 10 officers. About 10 officers. But there was one person in the room. Is that correct? Correct. And the guy in the ceiling, I guess. The guy in the ceiling, I guess they were in the ceiling. But one person in the room with 10 officers, and that one person in the room is the one that he says he was assaulted. Is that accurate? Is that part of the record? That's correct. And the record reflects that the person who was in the ceiling was removed without incident. Okay. No injuries. And that the roommate was also. Was it the case that Barry was struck physically by one of the officers who entered the room?  Well, he alleges that he made no force against the other officers. The record reflects that this is a disputed material fact where the officers allege that he actually caught hands and threw fists at the marshals. And the law is clear that some use of force is permitted where a person is resisting arrest. If it's a dispute of a material fact, what would be the next course of action? Even if there is a dispute of material facts, Your Honor, because Bivens did not apply in this instance, the Third Circuit here should affirm the lower court's decision, finding that under the Supreme Court precedent in Eckford, in this court's precedent in Gee, also considering the Fourth Circuit's recent analysis in the Tunko's case, that there's no Bivens remedy and that the lower court's decision should be affirmed. Well, along lines of what Judge Fuentes is saying, if we disagree with what you're saying, do we need to remand to have the district court consider qualified immunity in the first instance? And this court could consider qualified immunity, Your Honor. In Appellant's briefing, she correctly notes that the district court did not find qualified immunity in favor. Because it didn't need to, right? Correct. But in footnote 6, Your Honor, the supplemental appendix 87, you'll note that the court actually indicates that should they have reached the issue of qualified immunity, that they likely would have found in favor. And the law is clear that an officer has an opportunity to have some expectation of being able to use some level of force in order to effectuate an arrest. I think we understand. Thank you, counsel. Thank you, Your Honor. And we'll hear rebuttal. In terms of the issue of qualified immunity, again, the court, although the court did make that footnote, the court has not issued a decision regarding qualified immunity. There was no analysis there, right? Yes. Okay. My client's position is that it does not apply. This officer did, in fact, engage in excessive use of force against him. I disagree with counsel's assertion that it's unclear how my client sustained these injuries. However, a person does not ordinarily suffer broken ribs and various other physical injuries in the absence of some type of physical interaction. My client's position is that this officer caused his physical injuries and that he should be liable for damages of his own. Did you say broken ribs? Yes. They were taken to a hospital? Yes. And I submitted 200 pages of medical records to the district court. Were there any injuries to any of the officers involved? I believe Damar is indicating that he suffered a laceration to his forehead. And how did that occur? He's indicating that my client caused it. However, my client was charged and the case was dismissed at grand jury. My client denied ever touching any of the officers. All right. So that matter's closed, right? Yes. Okay. I would also like to highlight the fact that the district court specifically found that Damar was a ICE agent. The district court did not make a decision based on him or his classification or membership in a tax court, which I think is important. Why is that important? I mean, I don't think there's any dispute he was with the other officers, right? Okay. The fact that he was with the other officers, there's no dispute regarding that. But if the court is classifying him as an ICE officer and finding that there are special factors that should be attributed to him due to his status as an ICE officer, I think that the fact that he was a member of this task force is relevant because this task force does not have national security concerns as the district court is indicating this ICE officer has. But in terms of that argument, my client's position is that there were no enhanced concerns of national security or any other special factors, even if this officer is classified as an ICE agent. And that should not preclude his recovery in this case. Also, I note that in this brief, the defendant set forth regulations that apply to the U.S. Marshals as opposed to ICE. Again, the court made this decision based on this officer's status as an ICE agent, not as a U.S. Marshal. Again, or also, in my brief, I presented information regarding the INA regulatory scheme regarding complaints. And there was a case that I cited to in my brief that found that that scheme was not sufficient. So my client's position is that there are no remedial measures that he can undertake to address the issues that he was confronted with when these officers appeared at his home and attacked him and broke his ribs and caused him other injuries. And he's requesting that the court grant his appeal in this case. Thank you. Thank you, counsel. We will take this case under advisement. And I want to thank counsel and we want to thank counsel for their excellent briefing and oral argument today. We'll ask that the